## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No.:

**VSSCO INC. d/b/a ROCKY MOUNTAIN CYCLE PLAZA, INC.**  A Colorado corporation,

      Plaintiff,

v.

**COREPOINTE INSURANCE COMPANY**, a Delaware corporation,

      Defendant.

---

## COMPLAINT AND JURY DEMAND

---

COMES NOW, Plaintiff, VSSCO INC d/b/a Rocky Mountain Cycle Plaza, Inc. ("Plaintiff"), by and through its attorneys, Furtado Law PC, for its Complaint against the above-named Defendant, and states as follows:

### I.  NATURE OF THE ACTION

1. Plaintiff brings this action seeking economic and non-economic damages related to Defendant's breach of an insurance contract and statutory claims pursuant to C.R.S. §§10-3-1115 and 10-3-1116 arising from Defendant's unreasonable delay and denial of timely payment for insurance benefits including recoverable depreciation.

## II.    PARTIES

2.  VSSCO INC d/b/a Rocky Mountain Cycle Plaza, Inc. ("Plaintiff") is a Colorado corporation with its principal place of business at 412 North Chelton, Colorado Springs, CO 80909.

3.  CorePointe Insurance Company ("Defendant") is a foreign corporation with its principal place of business located in Ohio but is domiciled in Delaware and is authorized to do business in Colorado.

## III. JURISDICTION AND VENUE

4.  Jurisdiction is asserted pursuant to 28 U.S.C. §1332 and 28 U.S.C. § 1391. The amount in controversy exceeds $75,000 and there is complete diversity of citizenship between the parties. Venue is proper because Defendant's insurance policy was purchased in Colorado and was intended to provide coverage for a property located in Colorado.

## IV. GENERAL ALLEGATIONS

5.  Plaintiff sought and obtained an insurance policy, Policy No. KAW0000032 (hereinafter "the Policy"), from Defendant for commercial policy located at 412-424 North Chelton Road, Colorado Springs, CO 80909 (hereinafter "the Property").

6.  Upon information and belief, the Property's roof is divided into 12 sections. Low slopes roof sections are covered in ballasted EPDM membranes, single-ply plastic membranes, or gravel-covered built-up roof systems. All but one of the

gravel-covered BUR systems has been coated in fiberglass-reinforced elastomeric coating.

7.  On or about July 28, 2016, a hail and windstorm hit Plaintiff's Properties causing property damage.

8.  On or about August 17, 2017, just after Plaintiff learned of the damage, Plaintiff filed its claim with Defendant for damages related to the July 28, 2016 hail and windstorm.

9.  On or about September 10, 2017, Plaintiff hired United Restoration LLC as its contractor to perform repairs related to the date of loss.

10. On or about October 10, 2017, Defendant's appraiser Greg Cole of Property Damage Appraisers inspected Plaintiff's property for damage related to the date of loss. Upon information and belief, Mr. Cole's 2-month delay in inspecting the property is an unreasonable delay in the adjustment of the claim.

11. On or about October 10, 2017, Defendant's adjuster Mr. Cole drafted an estimate with a replacement cost value of $150,552.68 (actual cash value $93,407.62).

12. On or about October 15, 2017, Bryan Hubbard with United Restoration LLC inspected the property for property damage.

13. On or about October 19, 2017, Defendant paid Plaintiff $90,407.52 in actual cash value based on its estimate. It is unknown why this number differed from Defendant's ACV value in its October 10, 2017 estimate.

14. On or about October 31, 2017, Plaintiff's contractor Mr. Hubbard contacted Defendant requesting supplemental payment on the roof due to additional hail damage.

15. On or about November 8, 2017, Mr. Hubbard drafted his estimate for damages related to Plaintiff's property loss with a replacement cost value of $683,757.36.

16. On or about December 14, 2017, Plaintiff hired Mark Rothbauer with Compass adjusting as its public adjuster on the claim.

17. On or about December 29, 2017, Mr. Rothbauer sent his letter of representation to Defendant and explained that Plaintiff believed its damages were substantially larger than what Defendant previously paid.

18. On or about January 8, 2018, Defendant's adjuster Craig Boury responded that Mr. Rothbauer should contact Mr. Cole instead to discuss the claim.

19. On or about January 17, 2018, Mr. Cole and Mr. Hubbard met at the property for a site inspection.

20. On or about January 18, 2018, Mr. Rothbauer sent Defendant's adjuster United Restoration LLC's scope of repairs.

21. Upon information and belief, during the inspection, the parties peeled away a section of coating on the roof and determined that the underlying insulation panel was damaged and saturated.

22. Upon information and belief, shortly after, Mr. Hubbard sent Defendant his estimate with a replacement cost value of $745,362.72.

23. On or about February 15, 2018, Mr. Cole drafted a supplemental estimate for Plaintiff's property damage with a replacement cost value of $333,054.61. Upon information and belief, this estimate was not disclosed to Plaintiff or otherwise paid on until June 2018. Upon information and belief, Defendant had no

reasonable basis for withholding payment on this estimate for the next four months.

24. On or about March 13, 2018, Mr. Boury sent Plaintiff its reservation of rights letter. Mr. Boury also stated that he wanted to have Defendant's engineer on the roof for another re-inspection.

25. Upon information and belief, shortly after, Defendant hired Matthew Sitzmann with Haag Engineering to evaluate Plaintiff's loss. Upon information and belief, Mr. Sitzmann primarily works for insurance companies in adjusting claims and is not an unbiased observer on the claim.

26. On or about March 20, 2018, Matt Latham with Compass Adjusting emailed Mr. Boury questioning Defendant's repair methodology to only remove one layer of roofing during the reroofing process because Pikes Peak building code does not allow for removal of only one layer of roofing material on a modified bitumen roofing membrane. Upon information and belief, Pikes Peak building code only allows for additional layers if only one layer of modified bitumen roofing membrane exists. If there is more than one layer, the code requires that all layers be removed to the decking prior to reroofing.

27. On or about March 28, 2018, Mr. Boury sent Plaintiff a letter requested that Plaintiff reconsider its position to allow Defendant's engineer Matt Sitzmann to inspect the Property. Mr. Boury then stated that Plaintiff has no right under the Policy to reject Mr. Sitzmann and stated that Mr. Sitzmann is competent to do the inspection.

28. Upon information and belief, Mr. Boury also misrepresented the terms of the appraisal provision by stating it was a remedy under the Policy only after Defendant completed its investigation.

29. On or about April 2, 2018, Mr. Boury requested Mr. Rothbauer allow Defendant's engineer Matt Sitzmann with Haag Engineering access to Plaintiff's roof for a re-inspection of the Property.

30. On or about April 17, 2018, Mr. Sitzmann inspected Plaintiff's property with Mr. Rothbauer and Mr. Cole.

31. On or about May 8, 2018, Mr. Sitzmann drafted his engineering report which concluded as following regarding his April 17, 2018 inspection:

   a. In the last two years, the largest hail to hit Plaintiff's Property was 1 inch in diameter.

   b. The fiberglass-reinforced elastomeric coatings on Sections 2, 3, 5, 8, 11, and 12 had isolated tiny fractures that could have been from hail. There were numerous large cuts and tears in the coating from mechanical activity.

   c. The BUR systems on Sections 2, 3, 5, 8, 11, and 12 were worn out from age and had leaked before the coatings had been applied. Wetness beneath the BUR systems was a pre-existing condition. If not for the wetness beneath the BUR systems, effects of recent hail on the elastomeric coatings could have been addressed by replacing just the coatings of those sections. Because the substrates are wet, repairing damage to the elastomeric coating on those BUR systems will require replacing those roofs down to the deck.

   d. 4. The BUR system on Section 6 was not damaged by hail. The ballasted EPDM membranes on Sections 1 and 4 were not damaged by hail. The single-ply plastic membranes on Sections 7 and 10 were not damaged by hail.

32. Upon information and belief, Mr. Sitzmann's investigation of the claim was unreasonable on the following grounds:

a.  Mr. Sitzmann works almost exclusively for insurance companies and is biased.

b.  Mr. Sitzmann is not qualified to give an opinion about what size hail hit Plaintiff's property as Mr. Sitzmann is not a meteorologist.

c.  Mr. Sitzmann does not properly define mechanical activity and Mr. Sitzmann believes that foot fall caused the fractures on the membrane. Upon information and belief, foot fall cannot cause fractures in elastomeric coatings.

d.  Mr. Sitzmann conducted a cursory investigation of these roofing systems. Mr. Sitzmann failed to evaluate the section of the roof below the gravel on Section 6 for hail damage and only assumed it could not be hail damaged. Mr. Sitzmann selectively avoid doing core samples on exposed areas of Section 1 and 4.

e.  There is no scientific data supporting Mr. Sitzmann's methodology for determining the age of water damage in a BUR system. If Mr. Sitzmann is incorrect regarding the age of water damage and it is a covered benefit, replacement of the BUR system is required down to the decking and Defendant unreasonably denied this portion of Plaintiff's claim.

33. On or about May 10, 2018, Mr. Latham emailed Mr. Boury requesting disclosure of Matt Sitzmann's report.

34. On or about May 15, 2018, Mr. Rothbauer drafted his estimate of damages with a replacement cost value of $607,970.50.

35. On or about May 16, 2018, Mr. Latham sent a follow-up email to Mr. Boury again requesting disclosure of Mr. Sitzmann's report and stating that United Restoration recently applied a temporary coating to stop active leaks at the Property. Mr. Latham requested confirmation that Defendant would pay for the temporary repair.

36. Upon information and belief, shortly after, Mr. Boury sent Mr. Rothbauer a response that Defendant received Mr. Sitzmann's engineering report on May 8,

2017 but that it was being reviewed by management prior to Defendant issuing payment.

37. On or about May 16, 2018, Mr. Lathem requested the report and asked again if Defendant would pay for the temporary coating on the roof.

38. On or about May 17, 2018, Mr. Cole drafted a new estimate for Plaintiff's Property accounting for additional covered benefits outlined in Mr. Sitzmann's report that Defendant had previously missed. Mr. Cole's estimate had a replacement cost value of $191,045.91.

39. On or abut May 17, 2018, Mr. Cole sent this estimate with his report to Defendant's adjuster Mr. Boury which included his invoicing for time spent re-inspected Plaintiff' Property. In this estimate, Mr. Cole stated he inspected Plaintiff's Property on April 17, 2018 for 7 hours.

40. Upon information and belief, Mr. Cole arrived at the property around 10 am and left the property around 3 pm and was only at the property for 4-5 hours. Mr. Cole's drive time was billed separately as 3 hours. Mr. Cole's billing to his client is exaggerated.

41. On or about June 22, 2018, Mr. Boury sent Mr. Latham an email that Defendant re-reviewed its engineer's report and determined there was additional benefits owed to Plaintiff previously missed by Defendant. Specifically, Mr. Boury acknowledged that due to the water damage in the existing roof, building code required that all layers of the roof that are water saturated be removed to the decking and replaced. Upon information and belief, this statement is half-true as city code also does not allow for additional layers to be placed upon the roof

where two layers already existed. Upon information and belief, this was known many months before.

42. Mr. Boury also stated that a local roofing company retained by Defendant estimated the cost to replacement the BUR roofing system. Implicit with this statement, Defendant acknowledged that it made a claim's decision of owed benefits under the Policy based upon a non-party's assessment of the cost of repairs. Upon information and belief, Mr. Boury's bid from a local roofing company does not itself establish that the bid was competitive, and Defendant should not have based the cost of repair on just a single roofing company's bid amount. Therefore, Mr. Boury's new estimate was for a replacement cost value of $333,054.61.

43. Upon information and belief, shortly after, Defendant issued Plaintiff a check for the difference of what Defendant considered was owed in the amount of $142,008.70. Upon information and belief, Plaintiff has been paid $232,416.22 on the claim to-date.

44. Although Plaintiff provided Defendant with the necessary documentation to recover covered benefits, Defendant has unreasonably delayed and denied Plaintiff's claim for benefits by failing to conduct a reasonable investigation of Plaintiff's damages and refusing to add required line items on its estimate.

45. As a consequence of Defendant's conduct in unreasonably delaying and denying Plaintiff's claim for benefits due and owing under the Policy, Plaintiff have incurred and continues to incur damages.

## V.    FIRST CLAIM FOR RELIEF
(*Breach of Contract*)

46. Plaintiff incorporates the allegations contained in the paragraphs above as if fully set forth herein.

47. The Policy creates a contract of insurance.

48. By its actions, as described above, Defendant breached the contract of insurance by failing to pay all covered benefits due and owing under the Policy.

49. As a direct and proximate result of said breach, the Plaintiff are entitled to damages in an amount to be determined at trial.

## VI.    SECOND CLAIM FOR RELIEF
(*Violation of C.R.S. §10-3-1115 and Relief Pursuant to §10-3-1116*)

50. Plaintiff incorporate the allegations contained in the paragraphs above as if fully set forth herein.

51. C.R.S. §10-3-1115 forbids an insurer from unreasonably delaying or denying payment of a claim for benefits owed to or on behalf of a first-party claimant.

52. Plaintiff Bram is a first-party claimant under C.R.S. §10-3-1115.

53. Defendant has denied the Plaintiff Bram's claim without a reasonable basis within the meaning of C.R.S. §10-3-1115.

54. C.R.S. §10-3-1116 provides that a first-party claimant whose claim has been unreasonably delayed by an insurer may bring an action in Colorado district court to recover reasonable attorneys' fees and court costs and two times the covered benefit.

55. Because of Defendant's actions, as described above, violate C.R.S. §10-3-1115, Plaintiff bring this claim to recover its reasonable attorneys' fees and court costs and two times the covered benefit, as allowed under C.R.S. §10-3-1116.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff ask that this Court enter judgment in its favor and against Defendant on its Claims for Relief as follows:

1. Damages for Defendant's breach of contract;

2. All unpaid covered benefits owed under the party;

3. Two times the amount of all covered benefits under the Policy;

4. Costs, expert witness fees, and attorneys' fees per statute incurred in prosecuting its claims;

5. Pre- and post-judgment interest; and

6. For such other and further relief as this Court may deem just.

## PLAINTIFF DEMANDS A TRIAL BY JURY ON ALL CLAIMS

Respectfully submitted this 5th day of July 2018.

FURTADO LAW PC

/s/ Nathanael Archuleta
David Furtado, Esq.
Nathanael Archuleta, Esq.
Matthew Hamblin, Esq.
Furtado Law PC
3773 Cherry Creek North Drive,
Ste. 575
Denver, CO 80209
Telephone: (303) 755-2929
Email:      Dfurtado@furtadolaw.com
            Nathanael@furtadolaw.com
            Matthew@furtadolaw.com
Attorneys for Plaintiff